NOURSE & BOWLES, LLP
Attorneys for Defendants
SAMSUN LOGIX CORPORATION
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ALLIED MARITIME, INC.,

                 Plaintiff,

           - against -

SAMSUN LOGIX CORPORATION,

                Defendant.

----------------------------------------------------------X

08 CIV. 3656 (TPG)

**DECLARATION UNDER
PENALTY OF PERJURY**

## DECLARATION UNDER PENALTY OF PERJURY

Phil Hyeung Lee states as follows:

1.    I am the Assistant Manager of handy team 3 of Samsun Logix Corporation ("Samsun").

2.    I was personally involved in the fixing of the Charter Party of the J SAFE dated 4th Aug 2007 between Samsun and Allied Maritime, Inc. ("Allied").  Attached as Exhibit 1 is a true copy of the Charter Party.

3.    I am personally aware of all facts with respect to the instant dispute.

4.    Samsun Logix Corporation ("Defendant"), as Owner, chartered the vessel M/V J SAFE ("the Vessel") to Allied Maritime Inc. ("Plaintiff"), as Charterer, by a Charter dated August 4, 2007 for a period of 60/65 days ("the Charter Party").  The Charter Party requires the Plaintiff, among other things, to pay the Defendant charter hire



for use/charter of the Vessel at the rate of $22,000 per a day.  The Charter Party is subject

to arbitration in London and English law.

5.     On or about 20:00 Korean Local time 8th Aug 2007, Plaintiff provided

Defendant with voyage instructions for the Vessel.  However, those voyage instructions

were improper because they included instructions that the vessel should discharge at

geographic areas which were outside the trading zone permitted by the Charter Party.

Defendant so advised the Plaintiff and asked the Plaintiff to submit valid and proper

voyage instructions.  Plaintiff failed and refused to provide Defendant with proper

voyage instructions.  Further, Plaintiff failed to pay charter hire when due under the

Charter Party.  These actions of Plaintiff constituted a breach of the Charter Party by

Plaintiff.

6.     Defendant was thereby forced to mitigate its losses and damages which it

did by obtaining the best available substitute employment for the Vessel at $16,000 per

day.

7.     As best as can now be determined, the damages which Defendant has

suffered by reason of Plaintiff's above described breaches of the Charter Party are its lost

anticipated profits from the Charter Party which are quantified as follows

| | | |
|---|---|---|
| Plaintiff's failure to pay hire | $22,000.00 per day – 5.75% commission equals $20,735.00 times 60 days = | $1,244,100.00 |
| Less mitigating hire | $16,000.00 less 5% commission equals $15,200.00 times 60 days = | ($ 912,000.00) |
| Plus additional losses | $0.00 = | $        0.00 |
| **Total Losses:** | | $ 332,100.00 |

2

Samsun seeks security for this sum.

8.    In addition, Samsun seeks security for the attorney's fees it will incur in prosecuting this claim in London arbitration.  Those fees for an arbitration of this magnitude are normally about $150,000.00.

In addition, Samsun seeks simple interest for 3 years at 6.5%, or $64,750.00.

9.    The total claim for which Samsun seeks countersecurity is $546,850.00.

10.    No portion of the outstanding amount of hire has been paid although duly demanded by Samsun.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

_____

Executed the ___ day of May, 2008
The Republic of Korea

3



# Exhibit 1

*Exhibit 1*

Samsun Logix/SLT J.C.RYU

---

보낸 사람: genesis shipping [mail@genesisshipping.com]
보낸 날짜: 2007년 8월 6일 월요일 오전 12:34
받는 사람: hu3
참조:    'PILANGE@NAVER.COM'; 'GENESISSHIPPING'
제목:    M.V J.SAFE / ACCT ALLIED − RECAP

G E N E S I S Shipping Co.,Ltd, Seoul, Korea
Rm 510, Hyosung Olympic County II Officetel, Chamshil−Dong 175−12, Songpa−Gu, Seoul, Korea
Tel : 82−2−418−5781            Fax : 82−2−418−5782
Internet e−mail : mail@genesisshipping.com
−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−
T O : SAMSUN / 이 필 형 님

RE: J. SAFE/ALLIED

WITH A COUPLE OF MATTER PENDING PLEASED TO CONFIRM HAVING FIXED AS FOLLOWS
WITH SUBJECTS LIFTED AND C/P DD AUG 04, 2007:

NEGOS AND EVENTUAL FIXING TO REMAIN STRICTLY P + C


J. SAFE − AS DESCRIBED IN THE HEAD C/P, EXCEPT:
VSLS SPEED TO BE ADJUSTED TO 11 KTS


CHARTS OPTION TO BUNKER RMF 25 IN THAILAND/S. AFRICA
(SUBJ TO OWNS RECONFIRMATION)

OWNERS TO ANSWER QUESTIONNAIRE INCL. THE REQUIRED CERTIFICATES WHICH
TO FORM PART OF THE CHARTER PARTY.

FOR

− ACCT ALLIED MARITIME INC., MONROVIA, LIBERIA OR NOM
− DELY DLOSP SINGAPORE ATDNSHINC
− LAYCAN AUG 08−14, 2007. ETA S'PORE: 6H AUG 2007, ETD: 8TH AUG 2007
− 1 TCT VIA SP(S)/SB(S)/SA(S) ALW AFL ALW W/I IWL IN/OUT GEO ROT.
  DURATION ABT. 60/65 DAYS WOG
  INTENDED CARGO BAGGED RICE AND/OR OTHER LAWFUL MERCHANDISE
− REDEL DLOSP OR PASSING SP ANGOLA−DAKAR RANGE ATDNSHINC
− HIRE USD 22,000.−− DLY INCLOT PAYABLE 15 DAYS IN ADVANCE
− TRADING EXCLUSIONS AS PER YOUR E−MAIL OF AUG 02, 2007
− CARGO EXCLUSIONS AS PER BTB C/P AND ADD AT THE END:
  "NOTWITHSTANDING THE ABOVE OR MENTIONED ANYWHERE ELSE IN THIS C/P
CHARTERERS ARE ALWAYS ALLOWED TO LOAD BAGGED RICE"
− BOD: IFO ABT 680 MT/MGO 146 MT
  BOR TO BE ABT. SAME QUANTITY OF IFO AS ON DELIVERY AND MIN. 100 MT MDO UPTO   THE
QUANTITY VSL HAS BEEN DELIVERD WITH IN CHOPT.
  PRICES BENDS USD 400,− PMT IFO/USD 650,− PMT MDO
  Charterers' option to redeliver the vessel with minimum 100 mts MDO upto    the quantity vessel
has been delivered with, however, in such case      Charterers to pay Owners the difference
between this Charter−Party price      and the price at which vessel has been replenished at next
bunkering port    for the shortfall in MDO quantity on redelivery.
  CHARTERERS OPTION TO DEDUCT VALUE OF ESTIMATED BUNKERS ON REDELIVERY FROM

2008−05−29

LAST SUFFICIENT HIRE PAYMENT(S)
– ILOHC LSM USD 2,250.– INCL. REMOVAL OF DUNNAGE/DEBRIS
– C/V/E USD 1,200.– PMPR
– 5.75 PCT INCL 4,5 PCT TO CHRS ADCOM/EXCL

OTHERWISE BASED ON C/P DD FEB 27, 2007 AS RECEIVED TODAY WITH LOGICAL ALTERATIONS
AS PER MAINTERM WHICH ALWAYS SUPERSEDE AND FOLL AGREED CHANGES:

L. 56 – DELETE FROM: "30 DAYS....BY 25" AND INSERT "20 DAYS" BEFORE "15"
L. 58 – DELETE: "HALF MONTH" INSERT: "15 DAYS"
L. 78 – ADD "SHORE" BEFORE "TALLY"
CL. 38 4) BULK CEMENT PROTECTIVE CLAUSE, POINT (4): LAST LINE (BUT
FEES....ACCT) TO BE DELETED (COSMETIC)
CL. 44 – 2ND SENTENCE – PLS CLARIFY AS SEEMS THERE IS A WORD MISSING AFTER
"NECESSARY"
CL. 46 – 3RD LINE: ADD AFTER "POSITION" AND 6TH LINE AT THE END: "BUT NOT          LESS
FAVOURABLE TO CHARTERERS"
      4TH PARA DELETE "30 (THIRTY)" INSERT: "15"
CL. 61 – ADD:

In case of loading finished products including bagged cargo, Charterers have the option to arrange
for a joint pre–shipment condition survey and/or onboard tally and costs to be at Charterers
account.

CL. 63 – DELETE (NOT APPLICABLE)

ADDTL CLAUSE:

A) BIMCO DOUBLE BANKING CLAUSE (OWNS REVERTING AFTER CHECKNG WITH H/OWS)

B) (OWNERS REVERTING AFTER CHECKING WITH H/OWS)
Vessel to load only cargo for which clean and unclaused Mate's receipts and Bills of Lading can be
issued. In order to be able to do so, the Master to reject damaged or stained or torn cargo/bags
and respective cargo/bags to be replaced by sound cargo/bags. In case the cargo is infested
Charterers to arrange for fumigation after completing of loading in which case Master/Owners not to
clause Mate's receipts and/or Bills of Lading for cargo infestation and fumigation.

C)
Vessel on delivery and at subsequent loading ports to present with all holds clean, dry, free of smell,
rust scale and in every respect ready to receive Charterers' intended cargo in accordance with
Charterers' surveyor's
approval. In case vessel fails loadreadiness survey vessel to be off–hire until fully passed and
any/all extra costs resulting from such failure shall be for Owners' account including but not limited
to stevedore standby costs. If failing Owners immediately to take all necessary steps including but
not limited to the hiring of shore labour to have vessel passed with minimum delay.
Charterers shall have the option of accepting the vsl with proportionate
to the number of holds which have passed survey.

END

WITH REGARDS TO RME/RMF 25 ISSUE, WOULD LIKE TO MAKE A RESERVATION,
THAT IN CASE HEAD OWNS CAN'T GRANT THE OPTION TO BUNKER RMF 25 CHARTS
CAN REDELIVER VSL WITH MIN. 500 MT OF IFO.

THANKS YOUR EFFORT LEADING TO THIS FIXTURE. PLS COMPARE WITH YOUR NOTES.

++

2008–05–29

Case 1:08-cv-03656-TPG    Document 9-2    Filed 03/29/2008    Page 4 of 44

B.RGDS / JY AN(MOB:011-9750-5529)

2008-05-29

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

## Clause 29-Lay/Can/Notices
Delivery
Lay/Can to be narrowed by owners to a 7 days spread 30 days prior to layday commencement thereafter owners to tender 30/25/20/10/7/5/2/1 days notice of expected date/time of vessel's delivery.

## Clause 30-Timecharter Period/Options/Rate of Hire
See lines 14+52+91

## Clause 31-Certificates/Vaccinations
Owners are obliged to deliver and keep the vessels her crew and anything pertaining hereto supplied with up-to-date and complete certificates and approvals and equipment and fittings, enabling the vessel and her crew to load, carry and discharge all cargoes permitted under this charter party, and to receive bunkers within the trading limits of this Charter Party.
It is the responsibility of the Master and the owners to arrange for vaccination required at ports of call and to keep onboard corresponding valid certificates.

If Owners fail to comply herewith, any time lost and all extra direct expenses to be for Owners' account and Charterers may deduct same from the hire. In the event that the vessel is delayed by strikes, lock-out, labour stoppages, or any other difficulties due to ownership or in connection with the crew of the vessel, such time lost to be for Owners' account, including bunker fuel consumed during such period. Any delay and/or expenses or fines incurred on account of smuggling by vessel's Offers and crew to be for Owners' account

## Clause 32 –delete

## Clause 33 – I.T.F/Flag restriction
Owners warrant that the officers and crew of the vessel are covered for the duration of this Charter Party by an I.T.F. Agreement or other bona fide trade union agreement conforming to I.T.F. standards acceptable worldwide. Loss of time and extra expenses incurred as a result of non-compliance shall be for owners' account and may be deducted from hire.

Owners are responsible for any loss of time, delay or restriction to the full working of the vessel resulting from any action that may be taken against the ship and/or the owners by third parties for any reason whatsoever, unless caused by charterers and/or their agents and/or servants, Any time lost as a consequence of any such action by third parties shall be considered as off-hire and shall be deducted from the hire, any extra expenses resulting directly   from such action shall be the responsibility of and paid for by the owners or, in charterers' option, shall be paid by the charterers and deducted from the hire.

Owners warrant that the vessel is not blacklisted by any country within the trading limits of this Charter Party. Should the country of vessel's flag exclude the vessel from trading to the U.S.A., Canada or Japan, charterers have the option of canceling this charter party.

1

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

**Clause 34 – Oil Pollution**

Owners warrant to provide and maintain, during the entire time Charter period, at their expense and carry onboard the vessel a valid US Certificate of Financial Responsibility as required under the U.S. Oil Pollution Act 1990 and amendments thereto. Owners also warrant to have secured current certificates for other countries within the trading limits of this Charter Party, where similar guarantees are required. In no case shall the Charterers be liable for any damages as a result of the Owners' failure to obtain the aforementioned certificates or the Owners' non-compliance with present or future water pollution legislation enacted by individual U.S. States or other countries. Time lost by non-compliance to be considered as off-hire and Owners to hold Charterers harmless against any consequential loss, damage or expense.

**Clause 35 – P&I Club/Cargo Claims**

P&I Club/Cargo Claims

Owners guarantee that the vessel is entered and shall remain entered in a Protection and Indemnity Association for the duration of this Charter Party.

Entry shall include but not be limited to full cover for cargo claims of any nature.

Vessel is presently entered with the P&I Club:
Charterers P&I club:

Any liability to third parties for cargo claims shall be apportioned between owners and Time Charterers in accordance with the Inter-Club New York Produce Exchange Agreement 1996 and its subsequent amendments.

Further, in so far as Charterers and/or Agents may be called upon to grant extension of time to claimants, it is agreed by Owners that such extensions of time will also be considered as having been granted on their behalf as well as between Owners and Charteers, but Charterers to notify Owners on each occasion that extensions of time are granted. Owners to authorize Charterers without prejudice to the ultimate responsibility of either party, to grant reasonable extension of time for suit on Owners' behalf beyond the statutory one year of the Hague Rules in all cases of claimed damage or loss of cargo involving their possible liability provided that Charteres are granting similar extension with reference to their own possible liability. Charterers to keep Owners fully informed concerning such claims, in no case shall the time be extended for more than one year beyond the one year limit.

Should any cargo claim/ (damage/shortage) occurred in ivory coast, guinea, Sudan, charterers should be responsibility for such claim and vessel remain on hire.

**Clause 36 – Liability Insurance**

The charterers shall not be responsibility for loss of life nor personal injury nor arrest or seizure or loss or damage to the vessel, and/or other objects arising from perils insured against by customary policies of insurance.

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

**Clause 37 Trading Exclusions**

TRADING EXCLS:

VESSEL TO BE EMPLOYED LAWFUL TRADES FOR THE CARRIAGE OF LAWFUL MERCHANDISE

ALWAYS AFLOAT AND ALWAYS WITHIN IWL, VIA SAFE PORTS / SAFE BERTHS / SAFE

ANCHORAGES. CHARTERERS HAVE THE OPTION TO BREAK IWL   SUBJECT TO APPROVAL OF

OWNERS/VESSEL'S HULL AND MACHINERY'S UNDERWRITERS AND   AGAINST PAYING

ACTUAL ADDITIONAL PREMIUM WHICH NOT TO EXCEED WHAT'S QUOTED BY LLOYDS OF

LONDON.

SPECIALLY EXCLUDING:

AMERICA(INCLUDING SOUTHAMERICA,NORTH AMERICA, MID AMERICA), EUROPE, OCEANIA, S

OMALIA; ETHIOPIA;ISRAEL AND ISRAELIAN CONTROLLED TERRITORIES;

ANGOLA (INCLUDING CABINDA); CONGO,DEMOCIATIC REPUBLIC OF CONGO(FORMERLY ZAIRE

); IVORY COAST;SRI LANKA, ERITREA; ABKHAZIA; SIERRA LEONE; ALL WAR AND WAR LIKE ZON

ES WHCIH TO BE DETERMINED BY LLOYDS OF LONDON, ANY EXTRA WAR RISK PREMIUM CHA

RGED BY VESSEL'S HULL UNDERWRITERS TO BE FOR CHARTERERS ACCOUNT, HOWEVER SU

CH AMOUNT NOT TO EXCEED WHAT WOULD HAVE BEEN CHARGED BY LLOYDS OF LONDON

VESSEL IS NOT ALLOWED TO TRADE TO THE PORTS/AREAS, WHICH ARE PROHIBITED FROM

TRADING BY THE UNITED NATIONS.

CONWARTIME 1993 AS GOVERNING WAR RISK CLAUSE INCORPORATED IN C/P.

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

ICE CLAUSE: AS PER STANDARD NYPE 25, VESSEL NOT ALLOWED TO BREAK ICE NOR TO

FOLLOW ICEBREAKER .

MAINLAND CHINA AND TAIWAN TRADING CLS

CHARTERERS ARE NOT ALLOWED TO:

SEND VESSEL FOR WHATEVER PURPOSES DIRECTLY FROM TAIWAN TO MAINLAND CHINA,

UNLESS CALLING AN INTERMEDIATE PORT NEITHER IN TAIWAN NOR IN MAINLAND CHINA.

IF AUTHORITIES IN BOTH MAINLAND CHINA AND TAIWAN ALLOW DIRECT SAILINGS BETWEEN

THE TWO, THEN THIS CLAUSE IS NOT APPLICABLE. CHARTERERS   TO MAKE VESSEL CALL

CHINESE PORTS AT LEAST ONCE A YEAR, BUT CHARTERERS NOTE OWNERS` REQUEST FOR

ADDITIONAL CALLS TO CHINESE PORTS.

IF THE SITUATION IN ANY OF THE EXCLUDED COUNTRIES BECOMES NORMALISED DURING

THE   PERIOD   OF   THIS   CHARTER,   THE   EXCLUSIONS   IS   TO   BE   REVIEWED   BY

OWNERS/CHARTERERS   AND   ITS   APPROVAL   TO   BE   UNDERTAKEN   BY   OWNERS`

UNDERWRITERS OF HULL AND MACHINERY AND ANY REVISION NOT TO BE UNREASONABLY

WITHHELD. EQUALLY SHOULD THE POLITICAL SITUATION IN THE COUNTRIES CURRENTLY

4

ADDITIONAL CLAUSE TO MV "J.SAFE."
CHARTER PARTY DATED

ALLOWED TO TRADE IN THIS CHARTER PARTY DETERIORATE TO THE EXTENT THAT OWNERS

MIGHT REASONABLY REQUIRE TO EXCLUDE SAME FROM TRADING LIMITS, OWNERS TO

ADVISE CHARTERERS WHOM AGREE TO CAREFULLY CONSIDER SAME AND NOT

UNREASONABLY        WITHHOLD        APPROVAL        TO        CEASE        TRADING.

IN CASE OF THE VESSEL'S CALL AT CIS PORTS, THEN    EXTRA    CHARGES    FOR    ISSUING

EXEMPTION CERTIFICATE OF GYPSY MOTH IF ANY TO BE FOR CHARTERERS' ACCOUNT.

FOR TADING INDIA AND SAUDI ARABIA ,CHARTERERS TO ARRANGE SPECIAL GEAR CERTIFICA

TE AT CHARTERERS'S TIME /EXPENSES .

**Clause 38 – Cargo Exclusions**

NUCLEAR AND RADIO-ACTIVE CARGO WASTE/MATERIALS OR ITS PRODUCTS, ASPHATE

NUCLEAR, ISOTOPES, AND ALL DANGEROUS, HAZARDOUS, INJURIOUS,INFLAMMABLE

CARGOES, GOODS/COMMODITIES AS LISTED IN THE LATEST IMO D.G. CODE AND/OR ANY

SUBSEQUENT MODIFICATIONS/AMENDMENTS THEREOF, EXPLOSIVES OF ANY KIND

INCLUDING BLASTING CAPS AND DETONATORS, BLACK POWDER, WAR MATERIALS, ARMS

AND AMMUNITIONS, LIVESTOCK/ANIMALS, AND ANY KINDS OF LOGS/MAHOGANY LOGS,

CHARCOAL, CHARCOAL IN GUNNY BAGS, QUEBRACHO, SHAVINGS, COTTON,

SUNFLOWERESEED EXPELLERS, CAUSTIC SODA, COPRA, FISH MEAL, MEAT BONE MEAL,

HIDES OF ANY KIND, DIRECT REDUCED IRON, ORE PELLETS, SLUDGE ORE, HBI, FERRO

SILICON, PYRITES,QUICK LIME, CHLORIDE OF LIME, CEMENT,SULPHUR, AND NAPHTHA, SALT,

SALT PETRE,ASBESTOS, DANGEROUS CHEMICALS, NAPHTHA, PETROLEUM OR ITS

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

PRODUCTS. TABACCO,OILY PETCOKE, GREEN DELAYED PETCOKE, ASPHALT, PITCH (IN

BULK/DRUMS), TAR/BITUMEN OR ANY OF ITS PRODUCTS, AMMONIUM NITRATE AND

AMMONIUM SULPHATE, CREOSOTED GOODS, ACIDS, CALCIUM CARBIDE/CHLORIDE,

HYDROCHLORIDE,

CARGO EXCEEDING VESSEL TANK TOP STRENGTH BUT IN CASE HEAVYLIFT WITH WEIGHT

EXCEEDING VESSEL'S GEAR CAPACITY THEN CHTRS MUST HIRE SHORE CRANE FOR

LOADING/DISCHARGING OPERATION WHICH TIME/COST TO BE FOR CHTRS ACCOUNT ,AND

ALL OTHER UNLAWFUL COMMODITIES.

ALL DANGEROUS,INFLAMMABLE,INJURIOUS,HAZARDOUS AND CORROSIVE GOODS

COMMODITIES AS LISTED IN THE LATEST IMO D.G. AND /OR ANY SUBSEQUENT

MODIFICATION/AMENDMENTS THERETO,

NOTWITHSTANDING THE ABOVE EXCLUSIONS THE FOLLOWING IS AGREED:

1) SALT/SULPHUR PROTECTIVE CLAUSE

CHARTERS HAVE THE OPTION TO CARRY TOTAL TWO (2) CARGOES OF SALT, ONE (1) CARGO OF

SULPHUR (WHETHER IT BE FULL OR PART CARGO) PER EACH 12 MONTHS ON FOLLOWING

CONDITIONS:

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

(A) CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL'S

STABILITY TRIM AND STRESS PERMITTING;

(B) BEFORE LOADING ALL HOLDS ASSIGNED FOR SALT TO BE LIME-WASHED BY CHARTERERS

AT THEIR TIME/EXPENSE/RISK TO SATISFACTION OF MASTER WHICH NOT TO BE

UNREASONABLY WITHHELD.

(C) CARGO TOBE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY ACCORDING TO

LATEST IMO REGULATIONS.

(D) ALL FRESH WATER USED FOR IRRIGATION ONTO SALT DURING LOADING /VOYAGE

/DISCHARGING TO BE CHARTERERS` ACCOUNT.

(E) AFTER DISCHARGE CHARTERERS TO SUPPLY SUFFICIENT FRESH WATER AT THEIR

EXPENSE FOR WASHING DOWN OF ALL HOLDS;

(F) SUCH CARGO NOT TOBE THE LAST CARGO PRIOR TO REDELIVERY;

(G) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY (SUCH AS HOLD

CLEANING TO MASTER`S SATISFACTION/HOLD SURVEY ETC.) AND ANY DETENTION THROUGH

ANY OF ABOVE CAUSES TO BE FOR CHARTERERS` ACCOUNT.

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

(H) CHARTERERS ARE ALLOWED TO USE SHIP`S CREW TO PERFORM LIME-WASHING AND

REMOVAL OF SAME AGAINST PAYING ADDED 800USD FOR EACH LOADING HOLD BESIDES NORMAL

INTERMEDIATE HOLD CLEANING , BUT ALWAYS SUBJECT TO LOCAL REGULATIONS

PERMITTING , AND ALL TIME USED TO BE FOR CHARTERERS` ACCOUNT. OWNERS/MASTER

ARE NOT HELD RESPONSIBLE FOR PASSING HOLD CLEANLINESS FOR LOADING NEXT CARGO

AND FOR ANY CONSEQUENCES WHATSOEVER CAUSED DUE TO SUCH ARRANGEMENT.

THE LIBERTY GRANTED TO CHARTERERS HEREIN IS SUBJECT TO CHARTERERS` GUARANTEE

THAT THE ABOVE-MENTIONED SALT WILL BE NOT CARRIED IN CONSECUTIVE SHIPMENTS /

VOYAGES. OWNERS HAVE RIGHT TO WITHDRAW THE LIBERTY GRANTED TO CHARTERERES

HEREIN IN CASE OF ANY BREACH OF ABOVE BY CHARTERERS.

IT IS UNDERSTOOD THAT OWNERS / MASTER AGREE NOT TO APPLY ANY PRIOR LIME

WASHING OR ALTERNATIVE PRODUCTS IN CASE OF LOADING 'CHILEAN ROCK SALT' WITH

MOISTURE CONTENT OF ABOUT 0.02 PERCENT AS PER USUAL RECOGNIZED PROCEEDURE

OF THIS TRADE

2) PETCOKE PROTECTIVE CLAUSE

CHARTERS HAVE THE OPTION TO SIX (6) CARGOES OF PETCOKE (WHETHER IT BE FULL OR

PART CARGO) PER EACH 12 MONTHS ON FOLLOWING CONDITIONS.

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

A)      PERTOLEUM COKE MENTIONED HEREIN IS ONLY LIMITED TO THE TYPE

OF NON-HAZARDOUS/NON-DANGEROUS GREEN DELAYED TYPE AND/OR CALCINED TYPE

B) IF CHRTS EXERCISED SUCH OPTION, CHTRS UNDERTAKE TO USE HOLDS

AS LESS AS POSSIBLE,PROVIDED VSL`S STABILITY/TRIM AND STRESS PERMIT.

C) SUCH CARGO TO BE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY

ACCORDING TO LATEST IMO REGULATIONS.

D) AFTER DISCHARGING, CHTRS TO ARRANGE AT THEIR OWN TIME/EXPENSES OF ANY

ADDITIONAL WASHDOWN OF HOLDS AS MASTER

CONSIDER IT NECESSARY/REASONABLE.

E) SUCH CARGO NOT TO BE THE LAST CGO PRIOR TO REDELIVERY.

F) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY (SUCH AS HOLDS

CLEANING TO MASTER`S/SURVEYORS SATISFACTION) AND ANY DETENTION THROUGH ANY

OF ABOVE CAUSES TO BE FOR CHARTERERS`S ACCOUNT.

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

G) CHARTERERS ARE ALLOWED TO USE SHIP'S CREW TO PERFORM HOLD WASHING AGAINST

PAYING ADDED USD700 FOR EACH LOADING HOLD BESIDES NORMAL INTERMEDIATE HOLD

CLEANING, BUT ALWAYS SUBJECT TO LOCAL REGULATIONS PERMITTING AND ALL TIME USED

TO BE FOR CHARTERERS` ACCOUNT. OWNERS/MASTER ARE NOT HELD RESPONSIBLE FOR

PASSING HOLD CLEANINESS FOR LOADING NEXT CARGO AND FOR ANY CONSEQUENCES

WHATSOEVER CAUSED DUE TO SUCH ARRANGEMENT.

3) CONCENTRATE PROTECTIVE CLAUSE

CHARTERERS HAVE THE OPTION TO TWO (2) CARGOES OF ANY KIND OF CONCENTRATES

(WHETHER IT BE FULL OR PART CARGO) PER EACH 12 MONTHS ON FOLLOWING CONDITIONS.

(A) BEFORE COMMENCEMENT OF LOADING CHARTERERS/SHIPPERS TO PROVIDE WITH

LABORATORY ANALYSIS/CERTIFICATE EVIDENCING THAT BOTH THE FLOW MOISTURE POINT

AND TRANSPORTABLE MOSITURE LIMIT OF SUCH CARGO ARE WITHIN THE LIMIT AS SET OUT

BY IMO;

(B) SUCH CARGO TO BE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY

ACCORDING TO LATEST IMO AND/OR ANY OTHER LATEST REGULATIONS/RULES APPLICABLE

TO SUCH CARGO IN THE PORT(S)OF LOADING;

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

(C) AFTER LOADING CHARTERERS UNDERTAKE TO ARRANGE AT THEIR EXPENSE ANY

SPECIAL/EXTRA TRIMMING AND/OR LEVELLING OF CARGO TO SATISFACTION OF MASTER AND

INDEPENDENT SURVEYORS APPOINTED BY CHARTERERS/SHIPPERS AT THEIR EXPENSE;

(D) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY (SUCH AS HOLD

CLEANING TO MASTER`S SATISFACTION/HOLD SURVEY ETC) AND ANY DETENTION THROUGH

ANY OF ABOVE CAUSES TO BE FOR CHARTERERS` ACCOUNT.

(E) CONCENTRATES LOADED AT BOURGAS, BULGARIA IS NOT ALLOWED.

4) BULK CEMENT PROTECTIVE CLAUSE

CHARTERERS HAVE THE OPTION TO LOAD TWO (2) CARGOES OF BULK CEMENT (WHETHER IT

BE FULL OR PART CARGO) PER EACH 12 MONTHS ON FOLLOWING CONDITIONS.

(A) CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL`S

STABILITY TRIM AND STRESS PERMITTING;

(B) CHRTERERS HAVE THE OPTION TO CUT HOLES IN VESSEL`S HATCHCOVERS FOR LOADING

BULK CEMENT ON FOLLOWING CONDITIONS:

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

(1) ALL CUTTING AND RESTORING OF THE HOLES TO BE FULLY SUPERVISED / ATTTENDED/

APPROVED BY VESSEL`S CLASSIFICATION SURVEYOR WITH WRITTEN DOCUMENTS.


(2) HOLES NOT TO BE CUT WITHIN THE SAME FRAME SPACE WITH THE EXISTING GRAIN

FEEDING HOLES AND TO BE CUT AT THE SUITABLE PLACE OF HATCHVOVER IN ACCORDANCE

WITH VESSEL`S BUILDER`S SPECIFICATION. WELT PROTECTION TO BILGE WELL OF ALL

HOLDS IS STRICTLY NECESSARY TO KEEP SMOOTH SUCTION WHILE DISCHARGING HOLD

WASHING WATER BY USING GUM TAPES (PLASTER) OR SO. WHEN RESTORING CEMENT

HOLDS , CHILL PLATES OR SIMILAR MATERIAL DEEMED NECESSARY BY MASTER/`SURVEYOR

TO BE FITTED FOR COMPLETE WELDING IN ORDER TO REINSTATE THE HATCHCOVERS BACK

TO THEIR ORIGINAL CONDITION.


(3) AFTER COMPLETION OF RESTORING HOLES, OWNERS` OPTION TO HAVE HOSE TEST

CARRIED OUT IN PRESENCE WITH VESSEL`S CLASSIFICATION SURVEYOR AND TEST RESULT

SHOULD BE UPTO HIS SATISFACTION, OTHERWISE CHARTERERS HAVE OBLIGATION TO

RECTIFY THE SITUATION UNTIL AND WHEN SATISFIED BY THE VESSEL`S CLASSIFICATION

SURVEYORS.


(4) ALL TIME FOR PREPARING CUTTING AND RESTORING UPTO


CLASSIFICATION SURVEYOR`S SATISFACTION AS WELL AS ALL EXPENSES INCLUDING

CLASSIFICATION SURVEYOR`S FEES AND EXPENSES SHALL BE FOR CHARTERERS` ACCOUNT

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

BUT FEES AND EXPENSES FOR CHARTERERS ACCOUNT.


(C) AFTER LOADING CHARTERERS UNDERTAKE TO ARRANGE AT THEIR EXPENSE ANY

SPECIAL/EXTRA TRIMMING AND /OR LEVELLING OF CARGO TO MASTER'S SATISFACTION


(D) CHARTERERS ARE TO WASH ALL HOLDS BY FRESH WATER IMMDLY AFTER COMPL OF

DISCH N THOROUGHLY REMOVE RESIDUES AND CEMENT DUST IN HOLDS AT CHARTERERS

TIME AND EXPENSES TO MASTER'S SATISFACTION. BILGE WATER NOT TO BE PUMPED

THROUGH SHIP'S BILGE LINES BUT TO BE PUMPED OVERBOARD BY SUBMERGE PUMP

SUPPLIED BY CHARTERERS IF SAME NOT ON BOARD. CREW TO PERFORM SUCH CLEANING IF

RQSTED BY CHARTERERS AND IF PERMITTED BY LOCAL REGULATIONS, BUT CHARTERERS

STILL HAVE TO RESPONSIBLE FOR THE REMOVAL OF THE DIRTY WATER AFTER HOLD

CLEANING.


(E) SUCH CARGO NOT TO BE THE LAST CARGO PRIOR TO REDELIVERY;


(F) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY AND ANY

DETENTION THROUGH ANY OF ABOVE CAUSES TOBE FOR CHARTERERS' ACCOUNT.


(G) INTERMEDIATE HOLD CLEANING ADDED USD800 FOR EACH HOLD BULK CEMENT BESIDES NORMAL

HOLDS CLEANING.


THE LIBERTY GRANTED TO CHARTERERES HEREIN IS SUBJECT TO CHARTERERS'

GUARANTEE THAT THE ABOVE-MENTIONED BULK CEMENT WILL BE NOT CARRIED IN

CONSECUTIVE SHIPMENTS/VOYAGES. OWNERS HAVE RIGHT TO WITHDRAW THE LIBERTY

GRANTED TO CHARTERERS HEREIN IN CASE OF ANY BREACH OF ABOVE BY CHARTERERS.


5) SCRAP PROTECTIVE CLAUSE


CHARTERERS HAVE THE OPTION TO CARRY TWO (2) OF HMS 1+2 AND/OR SHREDDED SCRAP

(WHETHER IT BE FULL OR PART CARGO) PER EACH 12 MONTHS ON FLWG CONDITIONS.


1. THE SCRAP MENTIONED HEREIN ONLY LIMITED TO HMS 1+2 OR SHREDDED


SCRAP SPECIFICALLY EXCLUDING MOTOR BLOCKS AND TURNINGS AND ALSO METAL

BORINGS AND CUTTINGS.


2. CHARTERERS UNDERTAKE THAT LOADING OF FIRST LAYER OF SCRAP NOT TO BE

RELEASED UNTIL CARGO IS AS CLOSE AS POSSIBLE TO TANKTOP AND NOT TO BE

DUMPED/DROPPED DURING LOADING. FIRST LAYER OF SCRAP TO BE LOADED AT HEIGHT

AND TO BE EVENLY STOWED/TRIMMED TO SATISFACTION OF MASTER BEFORE LOADING

BALANCE OF CARGO.


3. SUCH CARGO NOT TO BE THE LAST CARGO PROIR TO REDELIVERY.

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

4. HOLD CONDITION SURVEY TO BE CONDUCTED IMMIDIATELY AFTER COMPLETION OF

DISCHARGE BY AN INDEPENDENT SURVEYOR IN CASE MASTER CONSIDER IT IS NECCESSARY

AND TENDER DAMAGE REPORT TO CHARTERERS IN WRITING. CHARTERERS TO BE

RESPONSIBLE FOR UPGRADING / REPAIRS OF AUSTRALIA HOLD LADDERS BEFORE VESSEL

PERFORMUING NEXT VOYAGE WHICH AUSTRALIA LADDERS REQUIRED OR NEXT PSC

INSPECTION OTHERWISE CHARTERERS TO BE RESPONSIBLE FOR ALL CONSEQUENCES

THEREOF.

5. ANY EXTRA EXPENSES RESULTING THERFROM/INCURRED THEREBY (SUCH AS HOLD

CLEANING TO MASTER`S SATISFACTION/HOLD SUVEY ETC) AND ANY DETENTION THROUGH

ANY OF ABOVE CAUSES TO BE FOR CHARTERERS` ACCOUNT.

6. CHARTERERS ARE ALLOWED TO USE SHIP`S CREW TO PERFORM HOLDS CLEANING

AGAINST PAYING ADDED USD700 FOR EACH LOADING HOLD BESIDES NORMAL INTERMEDIATE

HOLD CLEANING, BUT ALWAYS SUBJECT TO LOCAL REGULATIONS PERMITTING , AND ALL

TIME USED TO BE FOR CHARTERERS` ACCOUNT. OWNERS/MASTER ARE NOT HELD

RESPONSIBLE FOR PASSING HOLD CLEANLINESS FOR LOADING NEXT CARGO AND FOR ANY

CONSEQUENCES WHATSOEVER CAUSED DUE TO SUCH ARRANGEMENT.

THE LIBERTY GRANTED TO CHARTERERS HEREIN IS SUBJECT TO CHARTERERS GUARANTEE

THAT THE ABOVE-MENTIONED HMS 1+2 OR SHREDDED SCRAP WILL BE NOT CARRIED IN

CONSECUTIVE SHIPMENTS/VOYAGES. OWNERS HAVE RIGHT TO WITHDRAW THE LIBERTY

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

GRANTED TO CHARTERERS HEREIN IN CASE OF ANY BREACH OF ABOVE BY CHARTERERS.

-        DECK CARGO CLAUSE:

CHARTERERS HAVE THE OPTION TO LOAD DECK/HATCH COVERS CARGO AT CHARTERERS`

RISK/EXPENSE BASIS: DECK/HATCH COVERS CARGO, IF ANY, TO BE LOADED STRICTLY IN

CONFORMITY WITH CARGO EXCLUSION TERMS. DECK/HATCH COVERS CARGO TO BE

LOADED / STOWED / LASHED /SECURED / UNLASHED / DISCHARGED AT CHARTERERS`

RISK/EXPENSE/RESPONSIBILITY. CHARTERERS GUARANTEE THE INTENDED DECK/HATCH

COVERS CARGO TO BE LOADED IS NOT EXCEEDING THE VESSEL`S DECK/HATCH COVERS

STRENGTH AND STABILITY PERMISSION. DECK/HATCH COVERS CARGO TO BE PROPERLY

DUNNAGED /LASHED/SECURED TO MASTER`S/SURVEYOR`S DISCRETION/SATISFACTION. THE

WORDING OF `DECK/HATCH COVERS CARGO` AND `VESSEL/OWNERS/ CARRIER WILL NOT BE

RESPONSIBLE FOR CARGO DAMAGE/ LOST`TO BE MARKED ON BILLS OF LADING.

OWNERS NOT TO BE RESPONSIBLE FOR WASH AWAY AND/OR ANY OTHER DAMAGE TO

DECK/HATCH COVERS CARGO, ALSO OWNERS SHALL NOT TO BE RESPONSIBLE FOR

DECK/HATCH COVERS CARGO LOADING AND NUMBERS OF PIECES STATED ON BILL(S). FOR

SAFE TRANSITING SUEZ/PANAMA CANALS AND OUTLOOK PURPOSES, CHARTERERS ARE

RESPONSIBLE TO BUILD UP PASSAGES STRICTLY COMPLYING WITH CANAL AUTHORITY`S

RULES/REGULATIONS AND TO MASTER`S/SURVEYOR`S/CANAL AUTHORITIES` SATISFACTION.

ANY DAMAGE CAUSED TO VESSEL`S STRUCTURE RESULTING FROM THE DECK/HATCH

COVERS CARGO LOADED, TO BE ALL FOR CHARTERERS` ACCOUNT / TIME / RESPONSIBILITY

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

AND ANY CONSEQUENCES WHATSOEVER RELATING TO CARGO LOADED ON DECK/HATCH

COVERS. ANY CARGO CLAIMS WHICH MAY BE IMPOSED BY CARGO INTEREST TO BE SETTLED

DIRECTLY BY CHARTERERS AT THEIR TIMES/RISK AND EXPENSES.

## Clause 39 – Bunkers

Bunkers as on delivery to be about 210mt IFO ( 180cst) and about 60mt MDO. The bunker price refer the price of Singapore on the day of vsl's delivery.

Bunkers on redelivery to be about the same quantity as on delivery and the same prices to apply on redelivery. "About" means 10% more or less. The prices for different bunkers quantity on redelivery to be determined as per which marked on last bunkering invoice provided by charterers. Value of bunkers on board on delivery t be paid together with first payment of hire, estimated value of bunkers on board on redelivery to be deducted from last sufficient hire payment(s).

The charterers shall have the liberty to bunker the vessel for their own account before delivery, provided same does not interfere with owners' business.

A joint on-hire survey to be conducted by one mutually agreed independent surveyor at delivery port or at first loading port in owners' time and expense to ascertain vessel's bunkers onboard and hold cleanliness and general condition of vessel at time of delivery, A joint off-hire survey to be conducted by one mutually agreed independent surveyor at last discharging port in charterers' time and expense. Vessel to be redelivered to owners in the same condition as on delivery, fair wear and tear excepted.

Such bunker figures shall be final and binding on both parties. The charterers will be represented by the supercargo(es) or appointed surveyor(s) and the owners by the Master and/or Chief Engineer.

Charterers are to provide fuel to the vessel as follows:
IFO 180 CST   RME 25 and MDO grade DMB, but the said quality must be suitable for vessel's engine burning to Chief Engineer's satisfaction.

The master and crew to take drip samples at the vessel's manifold of all bunkers supplied by Charterers during the period of this Charter party. Such samples to be sealed and verified as true samples by bunkers suppliers' representative and the samples shall be delivered to the Charterers at their request. Any claim by Owners in relation to bunkers supplied by Charterers shall be made as soon as possible but in any event within 90 days of the date supply.

## Clause 40 – Weather Routing

the charterers may supply an independent weather advice to master during voyages specified by

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

the charterers and master shall comply with the reporting procedures of the weather bureau, except those which are apparently wrong and can be refused by the master, however the master remains responsible for the safe navigation and choice of route. Evidence of weather conditions shall be taken from vessel's deck logs and independent weather bureau's reports. In the event of a consistent discrepancy between deck logs and the independent weather bureau's reports, the independent bureau's reports shall be taken as ruling

### Clause 41 – Master's/Crew's Assistance

With reference to clause 8 of this charter party "customary assistance" shall mean all types of work which the master and crew would normally do when the ship is trading for the owners' account such as , but not limited to:

a) all opening and closing of hatches, when and where required if permitted by local regulations.
b) Warping alongside berths whenever required
c) Raising/lowering of cranes and/or gangways in preparation for cargo operations, give necessary assistance in the vessel's bunker operations and maintaining sufficient electric power on all cranes during cargo operations.
d) conduct hose test for water-tightness as required by relevant cargo/ship survey.
e) Supervise the stowage of the cargo thoroughly and control all the l oading, handling and discharging of the cargo and furnish the Charterers with stowage plans for each cargo.
   If the Charterers have reason t be dissatisfied with the performance of the vessel and/or her Officers/crew, the Owners, upon receiving complaints shall immediately investigate and take appropriate steps to correct the situation.

Charterers have the option to place gear, equipment and/or stores on board the vessel at their sole time, risk and expenses. The Owners and/or Master are not responsible for the losses, damages, etc. However, the Master/crew will endeavour maintain the gear, equipment and/or stores. The maintenance fees to be negotiated between the master and the charterers. The gear, equipment and/or stores to be redelivered to the charterers prior redelivery or at any time during the charter.

### Clause 42 – Bills of Lading

With reference to clause 8, it is understood that the charterers and/or their agents may sign Bill(s) of Lading on Master's behalf provided same are in strict conformity with Mate's   receipts. All bills of lading shall be without prejudice to this charter and the charterers shall indemnify the owners against all consequences or liabilities which may arise from any inconsistency between this charter and any bills of lading or waybills signed by the charterers or their agents or by the captain at their request without prejudice to this charter party.

If required ,for trading and/or bank purpose,owners to authorize charters/trading firms to issue 2nd sets of bill of lading,against charterers single loi in owners pni wording, prior to issue 2nd bs/l, charterers to collect full set of the 1st o. bs/l first   and return to owners" ,charterers to hold owners harmless/free of any risk and responssibility .charterers will indemnity all claims/liabilities so arised if any

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

### Clause 43 – Supercargoes/ Port Captains

The charterers or their supercargo(es) are entitled to call for speed trails, in ballast or loaded condition, indemnifying the Owners for any extra expenses in this connection. The charterers and/or their supercargoes(es) may install and remove, at their expense, time and risk such instruments as may be required to check the vessels' speed and revolutions of the main engine.

Under the condition that the normal vessel's operation not be effected, the charterers and/or their supercargo(es) shall have free and unlimited access to the whole vessel, including the bridge, holds and engine room and also to all vessel's tanks including but not limited to bunker, lubricating oil, sludge, ballast and freshwater tanks subject to master's approval which not unreasonable withheld.

Whenever required, the Master must bring the vessel into even trim to ensure correct bunker soundings. The charterers and/or their supercargo(es) and/or surveyors to have free and unlimited access to the vessel's deck and engine log books, tank plans, calibration scales and/or other plans as requested and are allowed to make copies of the original log books on board or ashore.

### Clause 44 – co-operation

Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo.   Owners and Master also undertake to co-operate with Charterers in taking necessary at Charterers' time, risk and expenses.

### Clause 45 – Stevedore Damage

Where possible at loading and discharging ports, stevedore damage, if any, to be settled directly between charterers and stevedores, charterers only to be responsible when Master notifies in writing at the time of occurrence of damage within 48 hours or as soon as possible, but latest upon sailing form the port of occurrence, (except in case of hidden damage, which to be reported on discovery but latest on completion of discharge on the voyage in question), to charterers or their agents in respective ports. For all stevedore damage, Master shall endeavour to, if possible, obtain from responsible party written acknowledgement of responsibility and specifying the extent of the damage. ( Should damage affect vessel's seaworthness, or working capacity, repairs are to be effected immediately and vessel to remain on hire.) All damages which are to be repaired by charterers and which do not refer to fair wear and tear and do not affect vessel's seaworthiness or working capacity are to remain for occasional repair when vessel is to dock for owners' account so that charterers pay for the actual cost of repairs, but not for time used, unless it exceeds the time used for the vessel's own repairs. Owners to advise charterers when stevedore damage has been settled between owners and third parties. In any event charterers to remain ultimately responsible for stevedore damage provided the master has complied with above reporting procedure.

### Clause 46 – Off-Hire

Should the vessel put back whilst on voyage by reason of an accident (other than accident to the cargo, by charterers and/or their agents and/or their servants) or break down, the hire shall be suspended from the time of putting back until she be again in the same position and the voyage resumed therefrom.

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

After suspension of hire, from any cause, the vessel shall be placed again at charterers' disposal at the same port or place where hire was suspended.

During any off-hire period estimated to exceed 8 days, the owners to give the charterers not less than 5 (five) days notice of resumption of the service.

If the vessel has been off-hire for a total period of 30(thirty) consecutive days during this charter party, the charterers are at liberty to cancel the balance of period of this charter party and redelivery shall take place upon vessel being free of cargo.

## Clause 47 – Punctual Payment
With reference to clause 5(five) it is agreed that the hire is to be considered correctly paid upon charterers ' bankers having irrevocably remitted the hire to owners bankers as stated in clause 53

Before exercising the option of withdrawing the vessel from the charter the owners will give the charterers 72 (seventy-two) hours, (Saturdays, Sundays and holidays excluded) official notice in writing and will not withdraw the vessel if the hire is paid with the 72 ( seventy-two) hours.

The charterers have the liberty to retain sufficient funds from last hire to cover actual and estimated amounts including estimated off-hire and value of estimated bunkers on redelivery for owners' account, which the supporting documents /vouchers shall be delivered to owners within 90 days.

## Clause 48 – Arbitration
All disputes arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London, unless the parties agree upon a sole arbitrator the reference shall be to 2 (two) arbitrators. One to be appointed by each of the parties, The arbitrators shall be commercial men, and the umpire, if appointed shall be a legal man, and shall be Members of the London Maritime Arbitrator's Association or otherwise qualified by experience to deal with commercial shipping disputes.

The contract is governed by English Law and there shall apply to arbitration proceedings under this clause the terms of the London Maritime Arbitrators' Association current at the time when the arbitration proceedings are commenced.

It is further agreed that the 7(seven)days limit for appointment of the arbitrators, either originally or by substitution, shall be changed to 30(thirty)days.

In the event the amount of claim and counterclaim does not exceed US$ 50,000.00 the parties agree to refer any dispute to a sole arbitrator in accordance with the LMAA Small Claims Procedure 1989".

## Clause 49 – Speed

20

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

The charterers may instruct the vessel to steam at any speed within the capabilities of vessel's main engine subject to master's and Chief Engineer's approval.

With reference to lines 9 and 10 of this Charter Party, good weather in this cp means conditions of wind maximum beaufort scale4 and sea condition maximum douglas sea state 3"

### Clause 50 – Lieu of Cleaning on Redelivery
With reference to line 54, the charterers have the liberty of redeliver the vessel with unclean holds, against paying the owners a lumpsum of us$ 4,000 in lieu of cleaning including disposal of dunnage/lashing material for all cargoes.

### Clause 51 – Captions
The captions of clauses herein are inserted for convenience only and shall not be construed to have any restrictive effect on the text herein.

### Clause 52 – Fittings
Charterers have the option to weld pad-eyes and/or other lashing/securing devices/points at their time/expense and subject to the Master's Approval which is not to be unreasonably withheld.
Charterers to remove all such pad-eyes and/or other lashing /securing devices/points prior to redelivery if required by owners, but charterers have the option redelivery vessel without removing pad-eyes by paying USD4.00 per pad-eye.

Charterers are responsible to repaint the burnt paint both sides.

### Clause 53 – Description Clause – ( all details " about")

# MAIN   PARTICULARS

VESSEL'S NAME : M/V J.SAFE

BUILT 1982, CLASS CCS, FLAG ST.VINCENT

DWT 25,526 MT ON 10.52 M    SSW

LOA/BEAM 184.62/22.8 M

GRT/NRT 15,526/8,725

GRAIN/BALE CAPACITY 29,313.30/27,554 CBM

7HOLDS/7HATCHES, CRANES : 4 x 12 MTS

TPC 35.1    P&I CLUB:CPI

SPEED/CONSUMPTION:

ABT 11.5KNOTS UNDER GOOD WEATHER CONDITIONS

ON ABT 22.5MTS IFO(180 CST) + ABT2.8 MTS MDO

PORT CONSUMPTION: ABT 1.7 MTS MDO AT ANCHORAGE

ABT 3.5 MTS MDO AT DISCHARGING/LOADING

(Above mentioned mdo excluded boiler consumption)

1) TYPE OF VESSEL SDBC

2) DWT/GRT/NRT/TPC/HOLDWISE GRAIN CAPACITY
25,529/15,526/8,725/35.1/29,313

3) HATCH COVER TYPE/HATCH SIZE /GEAR SPECIFICATION HYDRAULIC

NO.1        13.30 x 10.00

NO.2.4.6   10.66 x 11.44

NO.3.5.7   13.12 x 11.44

CRANE 4x 12MTS

TANK-TOP DEMENSION:

NO.1        9.8M(FOR)/16M(AFT)   x   17.5M

NO.2.4.6   16M x 10.5M

NO.3.5      16M x 18M

NO.7        16M(FOR)/13M(AFT) x 18.8M

4)   BREAKDOWN FOR GRAIN AND BALE EACH HOLD

| CUBIC FEET | CBM |
|---|---|
| NO.1    138,045/129,746 | 3906.67/3671.81 |
| NO.2    117,739/110,640 | 3332.01/3131.11 |
| NO.3.   182,700/171,770 | 5170.41/4861.09 |

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

NO.4    117,926/110,853                    3337.31/3137.14

NO.5    182,700/171,770                    5170.41/4861.09

NO.6    117,926/110,853                    3337.31/3137.14

NO.7    178,152/167,462                    5041.70/4739.17

TOTAL    1,035,188/973,094                29,295.82/27,538.55

5)    STRENTH PER M2 ON TANKTOP/HATCH COVERS/MAINDECK

TANKTOP: No.1        17.OOT/m2

            No.2.4.6.    30.00T/m2

            No.3.5.7    19.00T/m2

HATCH COVERS: 1.755T/m2

MAIN DECK        :3.57T/m2

6)    DISTANCES ETC:

1. DISTANCE KEEL TO TOP OF HATCH COAMING :15.1 M

2. DISTANCE WATER LINE TO TOP OF HATCH COAMING IN FULLY BALLASTED CONDITION:9.25M( INCLUDING FLOODABLE HOLD)

3. MAX AIRDRAFT IN FULLY BALLASTED CONDITION:34.33M

4. DISTANCE FROM RAILINGHATCH COVERS EACH SIDE:4.3M

5. HEIGHT FROM MAIN DECK TO TOP OF HATCH COVERS:1.27M

6. WHETHER ANY DECKHOUSEES/OBSTRUCTIONS ON DECK AND DIMS:NO

7. HEIGHT AND TYPE OF STANCHION:NO

8. VESSEL IS STRENGTHENENEDFOR HEAVY CARGOES AND CAN PROCEED WITH ALTERNATE HOLD LOADED:YES

HOLDS NO .2 + 4 + 6 MAY BE LEFT EMPTY.

7) MISC FITTINGS ETC

1. CARGOBATTENS FITTED(TYPE IE.WOODEN/STEEL AND IF REMOVABLE):NO

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

2. FW EVAPORATOR-CAPACITY AND DAILY FW CONSUMPTION:3.6MT/15MT

3. CONFIRM SUITABLE GRAB DISCHARGE:YES BUT NO GRABS

4. GRAINFITTED ACCORDING SOLAS REGULATIONS WITH ORIGINAL GRAIN LOADING MANUAL ONBOARD. VESSEL IS CAPABLE OF LOADING BULK GRAIN WITH 1 HOLD SLACK:YES

5. SELFTRIMMER:YES

6. STEEL FLOORED:YES

7. CO2 FITTWD:YES

8. CONFIRM FULL ITF:YES

9. AUSTRALIAN HOLD LADDERS:YES

10. LOG UNFITTED

11. GREAT LAKES UNFITTED

12. CONTAINER FITTED AND INTAKE U/O DECK:NO

13. VENTILATION:NATURAL

8)    MAX CONSTANT/FUEL TANK CAPATY AND ITS'MAX REIVABLE CAPACITY

ABT 300MT EXCLUDING FRESH WATER

BUNKER CAPACITY FUEL/MDO 1,457/291 CBM

9)    SPEED AND CONSUMPTION WITH BUNKER SPECIFATION

ABT 11.0 KNOTS ON ABT 22.5MT IFO 180CST-ISO 8217:1996(E)RME25

+ ABT 2.8MT MDO-ISO 8217:1996(E)DMB

10) PORT CONSUMPTION BASIS IDLE/WORKING 8HOURS,24HOURS SPECTIVELY

1. 7MT/2.8MT/3.5MT

11) CLASS CCS

12) OWNERS' P&I CLUB/DATE OF EXPIRY CPI

13) EX NAME/CHANGED TIME NIKI S/08[TH].FEB.2001

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

14) FULL STYLE OF OWNERS,DISPONENT OWNERS, CP OWNERS J.FASTER SHIPPING CO.,LTD

16) A.O.H. NO. OF MIC IN MANAGENG COMPANY AND/OR OWNERS JIANGSU OCEAN SHIPPING CO.

17) PHONE/FAX/CALL SIGN/INMARSAT

   CALL SIGN:J8B2195

VSL'S TLX NO.:437562710

TEL:00870-762 837 810

FAX:00870-762 837 812

   *****ALL      DETAIL      ABOUT*****


> OWRS BANK DETAILS


## Clause 54 – Delivery of Cargo Without Production of Bills of Lading

In case of the original bills of lading are not available at discharge port when the vessel is ready to commence discharge , upon obtain approval of owners in writing charterers are allowed to discharge the cargo against production of a letter of Indemnity on Owners P and I Club wording endorsed by a first-class bank. It is agreed that the signed Letter of Indemnity may be presented to Owners by telefax and the original Letter of Indemnity shall be delivered to owners directly by express.the Original bill(s) of lading should be delivered to owners within 40 days after completion of discharge,failing which, owners have liberty to refuse give charterers cooperation in releasing cargo against bank guarantee without presentation of original bills of lading.

## Clause 55 – arrest

Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel, the hire is to be suspended for any period that the vessel remains unemployed as the result of such arrest and Owners shall reimburse to Charterers any expenditure which they may incur under this Charter in respect of any period during which, by virtue of the operation of this clause, the hire is suspended, This Clause is inoperative should the arrest be caused by any act or omission of Charterers or their Agents or their servants.

## Clause 56 – Vessel's Plans/Dwt Scale

The owners will mail the General Arrange / Capacity Plan to the Charterers upon receiving from the shipyard.

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

**Clause 57 – Deck Cargo**
Delete.( See Clause 38)

**Clause 58 – Grabs**
Charterers have the option of placing their own grabs onboard the vessel and attach same to the vessel's cranes/hooks. All necessary fittings to be arranged and paid for by the Charterers. Charterers may store such grabs onboard on deck at their risk and expense .

**Clause 59 – MDO Usage**
Vessel uses diesel oil entering/leaving port in rivers/canals and maneuvering in shallow/narrow waters as well as for load/unsteady running conditions and stopping and starting as per description Clause 53.

**Clause 60 – Freshwater For Hold-Cleaning**
Fresh water for washing/cleaning holds to be for Charterers' account which to be paid to owners, against vouchers at actual price, if bought from shore. If produced onboard by freshwater evaporator or taken from the river, then same to be free of charge.

**Clause 61 – Steel Products/Surveys**
If finished steel products are carried, the Charterers are to inform the owners upon confirmation. The owners to arrange the cargo pre-loading survey. The cost of the same to be shared equally between Owners' and Charterers'. The owners shall send copies of the survey reports to the charterers.

**Clause 62 – Bunkering Prior Redelivery/ Viscosity of Fuel**
Owners' liberty to bunker vessel for their own account prior to redelivery provided not interfering with charterers' operations of the vessel. Fuel oil supplied during the charter period should be 180 CST.

**Clause 63 – Intermediate Hold Cleaning**
During the charter period, all intermediate hold cleaning are at Charterers' time/expense/risk and responsibility and in any case, Owners are not responsible for passing cargo hold cleanliness inspection due to residue of previous cargo, but understood Master and crew to exercise due diligence in preparing/clearing holds for Charterers' employment. However, if requested by Charterers, vessel's crew shall, upon completion of discharging of each cargo (save the last cargo prior to redelivery), render customary assistance in cleaning all cargo compartments in preparation for the next car go provided it is not prevented by any regulation or agreement whatsoever. Such cleaning work shall be performed while vessel is en route to next loading port provided the work can be safely done and that duration of voyage is sufficient. After work is done, Charterers are to pay crew directly Intermediate hold cleaning bonus US$2000 per voyage (including dunnage removal/disposal) for normal cargo, except for cargoes for which in lieu of hold cleaning rates have been agreed or for dirty cargo which additional bonus to be paid as per Clause 38.

26

Charterers shall replace at their expenses all fresh water consumed for hold cleaning based upon Master's presentation of water consumed for hold cleaning.

### Clauses 64 – Drydocking Clause
**DELETE**

### Clause 65 – Charterers' House Flag
The charterers or their Sub-Charterers shall have the liberty of flying their own house flag. The Charterers shall also have the liberty to paint the funnel mark to Charterer's mark, but the time/expenses cost to be for Charters' account.

In the event that the vessel is delayed by strikes, lock-out, labour stoppages, or any other difficulties due to ownership or in connection with the crew of the vessel, such time lost to be for Owners' account, including bunker fuel consumed during such period.

### Clause 66 – War Cancellation
In the event of outbreak of war (whether it is a declaration of war or not) between any two or more of the following countries: U.S.A., United Kingdom, C.I.S., Russia, France, Australia, Germany. The People's Republic of China, Japan, Singapore or in the event that the country under whose flag the vessel sails becomes involved in a war, either the owners or the Charterers may cancel the Charter.

### Clause 67 – Secrecy
All terms, details and rates for this fixture shall remain strictly private and confidential between all parties involved in this fixture, details shall not be divulged to any outside party at any time.

### Clause 68 – ISM Code
From the date of coming into force of the International Safety Management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the company" ( as defined by the ISM code) shall comply with the requirements of the ISM code.

Upon request the Owners shall provide a copy of the relevant Document of Compliance(DOC) and Safety Management Certificate (SMC) to the Charterers. Should owners be unable to provide same ISM certificate within 5 (five) days of request then charterers have the option of canceling the Charter unless the vessel already has cargo on board.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the company" to comply with the ISM code shall be for the Owners' account.

### Clause 69 – BIMCO Standard Year 2000 Clause for voyage and time Charter Parties
Year 2000 conformity' shall mean that neither performance nor functionality of computer systems, electronic and electro-mechanical or similar equipment will be affected by dates prior to or during

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

the year 2000.

Without prejudice to their other right, obligations and defences under this charter party including, where applicable, those of the Hague or Hague-Visby rules, the Owners and the Charterers shall exercise due diligence in ensuring year 2000 conformity in so far as this has a bearing on the performance of this Charter Party.

The vessel, the owners, the management and the registration are in compliance with the "year 2000 clause"  throughout the duration of the whole Charter and at any port of call."

**Clause 70 Protective Clauses**
The New Both-to-Blame Collision Clause, New Jason Clause, Baltic Conference War Risk Clauses for Timecharter 1993 (Code name: Conwartime 1993), P & I Bunkering Clause as applicable and attached are all to be considered as part of this Charter Party and all Bills of Lading issued Under this Charter shall be subject to all said clauses and contain Voywar 1993.

The USA/Canadian Clause Paramount as applicable or the Hague Rules as enacted in countries other than the USA or Canada as applicable to be incorporated in all Bills of Lading, except where Hamburg Rules apply.


## I. BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:

### BOTH -TO -BLAME COLLISION CLAUSE

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants other carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing previsions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision of contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.


### II.GENERAL AVERAGE AND NEW JASON CLAUSE

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

General Average shall be payable according to the York/Antwerp Rules, 1950, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ships is owned or operated by the carrier, salvage shall be paid for as fully as if such saving ship or ships belonged to strangers. such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

And Charterers shall procure the all Bills of Lading issued under this Charter Party shall contain the same clause.

### BIMCO Standard War Risk Clauses for Time Charters 1993
### Code Name "CONWARTIME 1993"

1    For the purpose of this Clause the words:

   a)   "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel and the Master and

   b)   "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group or the government of any state whatsoever which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2    The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through any port, place, area or zone (whether of land or sea) or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners may be,

or are likely to be, exposed to war risks.  Should the vessel be within any such place as aforesaid which only becomes dangerous or is likely to be or to become dangerous after her entry into it, she shall be at liberty to leave it.

3    The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels or is imposed selectively in any way whatsoever against vessels of certain flags or ownership or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

4
a)    The Owners may effect war risks insurance in respect of the hull and machinery of the vessel and their other interests (including but not limited to loss of earnings and detention, the crew and their Protection and Indemnity risk) and the premiums and/or calls therefore shall be for their account.

b)    If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within or is due to enter and remain within any area or areas which are specified by such Under- writers as being subject to additional premiums because of war risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5    If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

6    The vessel shall have liberty:

a)    to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any other way whatsoever which are given by the government of the nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

b)    to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

c)    to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supernational body which has the right to issue and give the same and with national laws

30

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

aimed at enforcing the same to which the Owners are subject and to obey the orders and directions of those who are charged with their enforcement;

d) to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier.

e) to divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

7    If in accordance with their rights under the foregoing provisions of this Clause the Owners shall refuse to proceed to the loading or discharging ports or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8    If in compliance with any of the provisions of sub-clause (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.


## ISPS CLAUSE


(a)    The Charterers may not order the vessel to ports/places which are not compliant with the ISPS-Code as of 1st July 2004. Further the vessel may not be ordered to ports/places which require a security level of the vessel higher than security level one in accordance with the ISPS-Code.


(b)    (i)    From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii)    Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the

ADDITIONAL CLAUSE TO MV "J.SAFE"
CHARTER PARTY DATED

Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(c)   (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master   with their   full   style   contact   details   and,   where sub-letting   is   permitted under the terms of this Charter Party, shall ensure   that   the   contact   details   of all sub-charterers are likewise provided   to   the   CSO   and the SSO/Master. Furthermore, the Charterers shall   ensure   that   all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The   Charterers   shall   provide   the   Owners   with   their full style contact   details and, where sub-letting is permitted under the terms of   the   charter   party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii)   Except as otherwise provided in this Charter Party, loss, damage,expense   or   delay, excluding consequential loss, caused by failure on the   part of the Charterers to comply with this Clause shall be for the Charterers'   account.   The Charterers are responsible for all costs and consequences   including   consequential loss in connection with ordering the   vessel to ports/places which are not compliant to the ISPS-Code or require   a   security   level higher than security level one according to the ISPS-Code.

(d)   Notwithstanding   anything   else   contained   in   this Charter Party all delay, costs or expenses   whatsoever   arising   out   of or related to security   regulations   or   measures required by the port facility, the vessel   or   any   relevant   authority   in   accordance with the ISPS Code including,   but   not   limited to, security guards, launch services, tug escorts,   port security fees or taxes and inspections, shall be for the Charterers'   account, unless such costs or expenses result solely from the   Owners'   negligence. All measures required by the Owners to comply with   the   Ship   Security   Plan   at security level one shall be for the Owners' account.

(e)   It is understood, that the vessel remains on hire, even if due to security matters the cargo operation is to cease or the vessel is to leave the port or is to wait outside the port/place until the security level is reduced to one.

(f)   If   either   party   makes   any   payment   which is for the other party's account according   to this Clause, the other party shall indemnify the paying party.


## AMS CLAUSE

(a)   If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

**ADDITIONAL CLAUSE TO MV "J.SAFE"**
**CHARTER PARTY DATED**

i)   Have in place a SCAC (Standard Carrier Alpha Code);

ii)  Have in place an ICB (International Carrier Bond);

iii)  Provide the Owners with a timely confirmation of i) and ii) above; and

iv)  Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the Vessel shall remain on hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.

(d)  The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

END

33

# TIME CHARTER
## GOVERNMENT FORM
### *Approved by the New York produce Exchange*
### **November 6th, 1913-Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946**

1    **This Charter Party,** made and concluded in ...*SHANGHAI, CHINA*...26TH.......day of ...*FEB...,2007*

2    Between....*J.FASTER SHIPPING CO.,LTD    (MANAGER:JIANGSU OCEAN SHIPPING*

    *CO.LTD)*.....................

3    Owners of the good....ST.VINCENT...**flag**... {~~Steamship~~ Motorship}...of..... *MV "J.SAFE"* ...............

4    ~~of.... ..tons gross register, and .. ....tons net register, having engines of.......................indicated horse power~~

5    ~~and with hull, machinery and equipment in a thoroughly efficient state, and classed..~~( **for description see clause 53**)

6    ~~at............of about ...................................cubic feet bale capacity, and about .................................tons of 2240 lbs.~~

7    ~~deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half~~

    ~~percent of ship's deadweight capacity,~~

8    ~~allowing a minimum of fifty tons) on a draft of..feet ...inches on ...Summer freeboard, inclusive of permanent bunkers,~~

9    ~~which are of the capacity of about .... tons of fuel, and capable of steaming, fully laden, under good weather~~

10    ~~conditions about .....knots on a consumption of about .....tons of best Welsh coal-best grade fuel oil-best grade diesel~~

    ~~oil,~~

11    And. *TONGLI SHIPPING CO.,LTD_*

12    .......... ..Charterers of the City of ...*.YANTAI*.........

13    ————That the said Owners agree to let, and the said Charterers agree to hire the said vessel,

    from the time of delivery, for

14    ~~=about~~ *Aout 12 months (about means more or less 30 days)_ via safe port(s), safe anchorage(s), sa fe berth(s) always afloat always within institute warranty limits*

15    .... .. within below mentioned trading limits.

16    Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17    the fulfillment of this Charter Party.

18. Vessel to be placed at the disposal of the Charterers, ~~at~~ *On— as on dropping last outward sea pilot 1(one) safe port within Gulf of Arden and Japan range in owners option at any time day or night,Sundays and holidays included* .....................................

19    ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as other-~~

20. ~~wise provided in clause No.6), as~~

21    ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No.5~~. Vessel on her delivery to be

22    ready *and fit in every way to receive and carry any permissible cargo and to be maintained in such condition during the entire period of this Charter* ~~to receive cargo with clean swept holds~~ and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23    donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

24    time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25    dise~~, including petroleum or its products, in proper containers~~ excluding ...................**See Clause 38**......................

26    ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

27    ~~all necessary fittings and other requirements to be for account of Charterers),~~ in such lawful trades, between safe port and/or ports,~~in British North~~

28    ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea,~~

29 ~~and/or Gulf of Mexico, and/or~~
~~Mexico, and/or South America......  .................................................  and/or Europe~~
30 ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River,~~
~~River St. Lawrence between~~
31 ~~October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea,~~
~~Black Sea and the Baltic;~~
32 ………………………………………*see clause 37*…………………………………………………………
33 ……………………………………..**and addendum**……………………………………………………………….
34 ……………………………………………………………………………………………………………...…….......
35 as the Charterers or their agents shall direct, on the following conditions:
36    1. That the Owners shall provide and pay for all provisions, wages and consular shipping and
discharging fees *including agency fees pertaining to owners' matters* of the Crew; shall pay for the
37 Insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and
maintain her class and keep
38 the vessel in a thoroughly efficient state in hull, *cargo spaces,* machinery and equipment for and during the service.
39    2. That   *whilst vessel on hire the* Charterers shall provide and pay for all the fuel except as otherwise agreed,
Port Charges, Pilotages, Agencies, Commissions
40 Consular Charges (except those pertaining to the Crew ), and all other usual expenses except those before
stated, but when the vessel puts into
41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners.
Fumigations ordered because of
42 illness of the crew *or cargos carried prior to delivery* to be for Owners account. Fumigations ordered because of cargoes
carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on~~
~~charter for a continuous period~~
44 ~~of six months or more.~~
45 Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade
or unusual cargo, but
46 Owners to allow them the use of any dunnage and shifting boards *and other fittings* already aboard vessel. Charterers
to have the privilege of using shifting boards
47 for dunnage, they making good any damage thereto.
48    3. ~~That the Charterers, at the port of delivery, and the Owners at the port of re-delivery, shall take over~~
~~and pay for all fuel remaining on~~
49 ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ..tons~~
~~and not more than~~
50 ~~..........................tons and to be re-delivered with not less than ..............................tons and not more~~
~~than ...............tons.~~   *See bunkers clause 39*
51    4. That the Charterers shall pay for the use and hire of the said Vessel at the rate
52.  of ..*USD____ net daily including overtime payable every 15 days in advance*………
………………………………………*in* Unite States Currency ~~per ton on vessel's total deadweight carrying~~
~~capacity, including bunkers and~~
53 ~~stores, on ..............................summer freeboard,~~ *per Calendar Month,* commencing on and from the
day of her delivery, as aforesaid, and at
54 and after the same rate for any part of a *day* month ; hire to continue until the hour of the day of her re-delivery in like
good order and condition, ordinary
55 wear and tear excepted to the Owners (unless lost)
*at on dropping last outward sea pilot 1(one) safe port within Gulf of Arden and Japan range in*
*Charterers' option at any time day or night, Sundays and holidays included* unless otherwise mutually agreed.
56. Charterers are to give Owners not less than *30 days notice of intended redelivery range followed by*
*25/15/10/5/3 days approximate and probable port and 2/1 days definite*

57   notice of vessels expected date of re-delivery, and probable port

58       5. Payment of said hire to be made in ~~New York~~ *(see description clause 53)*in cash in United States Currency ~~semi-monthly~~ *every 15 days* in advance, and for the last half month or

59   part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day as it becomes

60   due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers otherwise failing the punctual and regular payment of the

61   hire, or bank guarantee, or on any *fundamental* breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62   terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count~~

63   ~~from 7 - a.m. on the working day~~

~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64   ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65       Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66   to $2\frac{1}{2}$% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67   of such advances.

68       6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place that Charterers or their Agents, may

69   direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70   lie aground *in ARGENTINA and BRAZIL only.*

71       7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72   accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73   tackle, apparel, furniture, provisions, stores and fuel. *No passengers allowed.* ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

74   ~~paying Owners.........per day per passengers for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75   ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~

76       8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77   boats.The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78   agency; and Charterers are to load, stow, ~~and~~trim, *tally, secure and discharge* the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for

79   cargo as presented, in conformity with Mate's receipts

80       9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, officers, or Engineers, the Owners shall on

81   receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82       10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83   with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84   rate of USD $10.00 per day. Owners to victual Pilots and Customs Officers, ~~and also, when authorized by Charterers or their Agents,~~ to victual Tally

85   Clerks, Stevedore's Foreman, etc., Charterers paying ~~at the current rate per meal,~~ for all such victualling *US$ 1,200.00*
*lumpsum per month/pro rata for cables/victualling, entertainment and representation.*

86       11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing
directions, in writing, and the

87   Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their
Agents, and furnish the Char-

88   terers, their Agents or Supercargo , when required, with a true copy of daily *deck and engine logs in English* ~~Logs,~~
showing the course of the vessel and

89.   distance run and the consumption of fuel

90      12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91      13.~~That the Charterers shall have the option of continuing this charter for a further period of a month~~

92  ~~.......................................................................................................................................................................~~

93  ~~on giving written notice thereof to the Owners or their Agents......days previous to the expiration of the first-named~~

93  ~~term, or any declared option.~~

94      14. That if required by Charterers, time not to commence before.  *1ˢᵗ APRIL ,2007*  and should vessel

95  not have given written notice of readiness on or before *15ᵀᴴ JUNE,2007*  but ~~not later than 4 p.m.~~ Charterers or

96  their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *D*

*elivery/Redelivery time to be based on G.M.T. for the purpose of hire calculation but lay/can to be based on local ti*

*me. Owners to narrow lay/can to 7 days spread 30days prior to commencement.*

97      15. That in the event of the loss of time from deficiency *and/ or default, and/or strike* of men or *deficiency of* stores,
fire, breakdown or damages to hull, machinery or equipment,

98  grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or
by any other cause *unless such causes are due to Charterers and/or their agents and/or their servants*

99  preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost *and all extra*

*directly related expenses may be deducted from the hire*, and if upon the voyage the speed be reduced by

100  defect in or breakdown of any part of her hull, machinery of equipment, the time so lost, and the cost of any extra fuel
consumed in consequence

101  thereof, and all extra expenses shall be deducted from the hire.

102      16.  That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last
heard of )shall be

103  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all
dangers and accidents of the Seas,

104  Rivers, Machinery, Boilers and Steam Navigation, negligence and errors of Navigation throughout this Charter Party,
always mutually excepted.

105  The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress,
and to deviate for the

106  purpose of saving life and property.

107      17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to
*arbitration as per clause 48*   ~~three persons at New York,~~

108  ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two~~
~~of them, shall be final, and for~~

109  ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be~~
~~commercial men.~~

110      18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this charter,
including General Aver-

111  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any
overpaid hire or excess

112   deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance
      incurred by them or their agents, which

113   might have priority over the title and interest of the owners in the vessel.

114       19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and
      Charterers' expenses and

115   Crew's proportion. General Average shall be adjusted, stated and settled **in London,** according to ~~Rules 1 to 15,~~
      ~~inclusive, 17 to 22, inclusive, and Rule F of~~

116   York-Antwerp Rules **1994 and any subsequent amendments, hire not to contribute to General Average** ~~1924, at such port~~
      ~~or place - in the United States as may be selected by the carrier, and as to matters not provided for by these~~

117   ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign~~
      ~~currencies shall be exchanged into~~

118   ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign~~
      ~~currency shall be converted at~~

119   ~~the rate prevailing on the last day of disc~~
      ~~harge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

120   ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods.~~
      ~~- Such cash deposit as the carrier~~

121   ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and~~
      ~~- special charges thereon, shall, if~~

122   ~~required,  be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such~~
      ~~- deposit shall, at the option of the~~

123   ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held~~
      ~~- in a special account at the~~

124   ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit~~
      ~~- balances, if any, shall be paid in~~

125   ~~United States money.~~  *See New Jason Clause as attached*

126   ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from~~
      ~~- any cause whatsoever,~~

127   ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute,~~
      ~~- contract, or otherwise, the~~

128   ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the~~
      ~~- payment of any sacrifices,~~

129   ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special~~
      ~~- charges incurred in respect of the~~

130   ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner~~
      ~~- as if such salving ship or~~

131   ~~ships belonged to strangers.~~

132   Provisions as to General Average in accordance with the above are to be
      included in all bills of lading issued hereunder.

133      20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed

134   to as to quantity, and the cost of replacing same,    to be allowed by Owners.

135      21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter,
      Vessel is to be docked at a

136   convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in
      every six months, reckoning from

137   time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.

138 ...   ...................................................................................................................................

139 .......................................................................................................................................

140      22. Owners shall maintain the gear of the ship as fitted, ~~providing gear (for all derricks) capable of~~
      ~~handling lifts up to three tons, also~~

141 ~~providing ropes, falls, slings and blocks . If~~
~~vessel is fitted with derricks capable of handling heavier lifts,~~ Owners are to provide necessary gear for

142 same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel
*sufficient light* ~~lanterns and oil~~ for

143 night work, *in holds, on deck and hatches* ~~and vessel to give use of electric light when so fitted but any additional lights~~
~~over those on board to be at Charterers' expense~~. The

144 Charterers to have the use of any gear on board the vessel.

145     23. Vessel to work night and day, if required by Charterers, and all cranes to be at Charterers' disposal during loading and
discharging;

146 ~~steamer to provide one winchman per hatch to work winches day and night,   Charterers agreeing to pay officers, engineers,~~
~~winchmen,~~

147 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the~~
~~ship's articles. If the rules of the~~

148 ~~port, or labor unions, prevent crew from driving winches,~~ shore cranemen to be emplyed and paid by Charterers. In the event
of a

    disabled ~~winch or winches~~ *crane or cranes* or insufficient power to operate crane or ~~winches~~ *cranes*, Owners to pay for shore
crane, or

149 crane, in lieu thereof, if required, and pay any loss of time occasioned

150 thereby *including stevedore standby expenses. If charter decide not  to hire the shore cranes, daily hire to*

*be deducted according to the  idle crane(s) and idle time.*

151     24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions~~
~~from liability contained~~

152 ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating~~
~~to Navigation of Vessels;~~

153 ~~etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to~~
~~the following clauses, both~~

154 ~~of which are to be included in all bills of lading issued hereunder.~~ *See Clause 70*

155 ~~U.S.A. Clause Paramount~~

156 ~~This bill of lading shall have effect subject to the provisons of the Carriage of Goods by Sea Act of~~
~~the United States, approved April~~

157 ~~16,1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be~~
~~deemed a surrender by the carrier of~~

158 ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said~~
~~Act.If any term of this bill of lading~~

159 ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160 ~~Both-to-Blame Collision clause~~

161 ~~If the ship comes into collison with another ship as a result of the negligence of the other ship~~
~~and any act, neglect or   default of   the~~

162 ~~Master, Mariner, pilot or the servants of the Carrier in the navigation or in the management of the~~
~~ship, the owners of the goods carried~~

163 ~~hereunder will indemnify the Carrier against all loss or liability to the other   or   non-carrying~~
~~ship or her owners in so far as such loss~~

164 ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods,~~
~~paid or payable by   the other or non-~~

165 ~~carrying ship or her owners to the owners of said goods and set off, recouped or   recovered by~~
~~the other   or non-carrying ship or her~~

166 ~~owners as part of their claim against the carrying ship or carrier.~~

167     25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships

have been or are about to be with-
168   drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able
      on account of ice to safely enter the
169   port or to get out after having completed loading or discharging.
170       26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to
      remain responsible for the
171   navigation of the vessel, insurance, crew, *acts of pilots and tugboats* , and all other
      matters, same as when trading for their own account.
172       27. Address commission …….**NIL**……….
173       ....................................................
174   on hire earned and paid under this Charter.
175       28.   commission of *2.5* per cent paid by ........ under this Charter.

*Additional clause 29 through70   , Conwartime 1993, New Jason clause, USA Clause Paramount and New both-to-Blame Collision clause ,Isps clause,Ams clause   all as attached, is to be considered fully incorporated in this Charter Party.*

CHARTERERS:                                    OWNERS:


_____          _____
TONGLI SHIPPING CO.,LTD                     J.FASTER SHIPPING CO.,LTD